UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

MARY JACKSON-McWILSON,

                              Plaintiff,

     v.                                        **DECISION AND ORDER**
                                                        11-CV-623S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                              <u>Defendant.</u>

1.     Plaintiff Mary Jackson-McWilson challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since September 3, 2007, due to bilateral carpal tunnel syndrome, obesity, and mood disorder/depression. Plaintiff contends that her impairments render her unable to work. She therefore asserts that she is entitled to payment of disability benefits under the Act.

2.     Plaintiff protectively filed an application for disability insurance benefits on November 7, 2007. The Social Security Administration ("SSA") denied her application on March 28, 2008.  On January 26, 2010, ALJ William Pietz held an administrative hearing, at which Plaintiff appeared with counsel and testified. On February 12, 2010, the ALJ denied Plaintiff's application for benefits. The Appeals Council subsequently denied Plaintiff's request for review on May 24, 2011. Plaintiff then filed the current civil action challenging Defendant's final decision.[1]

---

[1] The ALJ's February 12, 2010, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

3. On February 23 and 24, 2012, respectively, Defendant and Plaintiff filed Cross Motions for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 10 and 12.) After full briefing, this Court deemed the motions submitted and reserved decision.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. § § 405(g), 1383(c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Aubeuf v. Schweiker, 649 F.2d 107, 111-12 (2d Cir. 1981). Substantial evidence is that which amounts to "more than a mere scintilla," or "what a reasonable mind might accept as adequate to support a conclusion." Diaz v. Shalala, 59 F.3d 307, 314 (2d Cir. 1995). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the Plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that

of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. § § 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity ("RFC") to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this

inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

       9.     In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since September 3, 2007, the alleged onset date of her disability (R. at 16);[2] (2) Plaintiff's bilateral carpal tunnel syndrome, obesity, and mood disorder/depression are "severe" impairments within the meaning of the Act (R. at 16); (3) Plaintiff's impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 17-18); (4) Plaintiff retains the RFC for light or sedentary work in that she can lift up to 20 pounds, frequently walk or stand, follow simple instructions, and occasionally work with others, but is limited in the use of her hands for fine and gross activities to five minutes at a time (R. at 18, 20); 20 C.F.R. § 404.1567(b); and (5) Plaintiff is unable to perform her past relevant work because she can no longer use her hands for more than five minutes at a time. (R. at 21.) Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff is able to work in a significant number of jobs in the national economy. (R. at 22.) Ultimately, the ALJ determined that Plaintiff was not under a disability, as defined by the Act, at any time through the date of his February 12, 2010 decision. (R. at 23.)

---

[2] Citations to the underlying administrative record are designated as "R."

10.     Plaintiff's first challenge to the ALJ's decision is that he erred at step three of his analysis by failing to find that her bilateral carpal tunnel impairment meets or medically equals 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 11.14, for impairment of peripheral neuropathies. The Listing requires disorganization of motor function as described in 11.04B.

11.     The ALJ considered the relevant electromyograms and noted that the claimant's carpal tunnel syndrome was moderately severe. (R. at 17.)  But the ALJ found that Plaintiff's ailments did not cause significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, as required by Listing 11.14, 11.04B, and 11.00C. (R. at 17.)

12.     Plaintiff contends that her carpal tunnel syndrome meets the Listing.  She relies on two objective electromyograms that reveal "persistent, severe polyneuropathies in her bilateral upper extremities," (R. at 234, 431), which is consistent with her complaints of pain, tingling, numbness, and weakness, (R. at 31-33).  She also rests on hand specialist Dr. Callahan's classification of her as "totally disabled" on January 6, 2010.  (R. at 30, 432.)

13.     Upon review, this Court finds that the ALJ's conclusion is supported by substantial evidence in the record.  Plaintiff complained of various pain, numbness, and bruising since the onset of her alleged disability on September 3, 2007. (R. at 29, 33.) Plaintiff's wrists showed a history of carpal tunnel in an MRI scan on May 12, 2006. (R. at 198.) Surgeon Paul Paterson, M.D., performed a carpal tunnel release on Plaintiff on September 23, 2006. (R. at 369.) An electrodiagnostic evaluation on April 11, 2007, showed evidence of persisting, bilateral, moderately severe median neuropathies at the

wrist. (R. at 234.) As such, two ECMC doctors recommended that Plaintiff should work only part time or limited duty. (R. at 224-25.)

14. But improvement in Plaintiff's wrists was also noted. (R. at 234.) Despite Plaintiff's complaints of pain, she had 5/5 flexion and extension in her wrists and neither showed atrophy. (R. at 230.) During an examination conducted by Dr. Samuel Balderman on March 6, 2008, Plaintiff was in no acute distress and was reported in overall good health. (R. at 308.) She was able to cook, care for herself, and read. (R. at 308.) Plaintiff had "full range of motion in her shoulders, elbows, forearms, and wrists bilaterally." (R. at 309.) She also had "5/5 strength in her upper and lower extremities, her joints were stable and nontender, and there was no redness, heat, swelling, or effusion." (R. at 309.) Hand and finger dexterity were intact and grip strength was 5/5 bilaterally. (R. at 309.) Evidence in the record therefore supports the ALJ's finding.

15. Moreover, the ALJ's negative credibility finding supports his conclusion. The ALJ questioned Plaintiff's credibility in describing the severity of her injuries. (R. at 19.) At her hearing, Plaintiff testified that she could use her hands only up to 5% of the day. (R. at 40.) She also declared that she could not perform fine finger movements for more than five minutes at a time. (R. at 36.) Plaintiff explained that she was in extreme arm, neck, and back pain. (R. at 33.) Yet Plaintiff failed to complain of her severe symptoms at several doctor's visits and failed to mention to any doctor that she drops things or that she lost the use of her hands 95% of the time. (R. at 19, 244, 303, 307-08, 352-53.) Additionally, Plaintiff took only Tylenol for her pain. (R. at 38.)

16. Finally, the ALJ was not obligated to accept Dr. Callahan's opinion that Plaintiff was "temporarily totally disabled" because it was inconsistent with other medical

6

evidence. (R. at 432.) At an appointment on September 22, 2009, Dr. Callahan noted that Plaintiff's left cubital tunnel decompression at the elbow had relieved her ulnar nerve symptoms. (R. at 419-20, 428.) Dr. Callahan also observed no radiating neck, arm, or back pain at that time. (R. at 428.) Yet on January 6, 2010, just over three months later, Dr. Callahan classified Plaintiff as "temporarily totally disabled." (R. at 432.) Due to this inconsistency in Dr. Callahan's evaluations, as well as his inconsistency with other medical experts such as Dr. Balderman, the ALJ gave only limited weight to Dr. Callahan's conclusions.

17. In addition, a conclusory finding by a medical source that a plaintiff is "disabled" or "unable to work" does not mean that the Commissioner will determine the claimant is disabled within the meaning of the Act. See 20 C.F.R. § 404.1527(e). It is the Commissioner's responsibility to make the final decision as to whether the claimant meets the statutory definition of "disabled." See 20 C.F.R. § 404.1527(e)(1).

18. Having considered the record, this Court detects no reversible error in the ALJ's conclusions regarding the severity of Plaintiff's injuries or the finding that Plaintiff's carpal tunnel syndrome does not meet or medically equal Listing 11.14. Both are supported by substantial evidence.

19. Plaintiff's second argument is that the ALJ's decision is not based on substantial evidence in the record as a whole. Specifically, Plaintiff argues that the ALJ failed to consider and explain the effects of Plaintiff's extreme obesity at each step of his evaluation. Plaintiff takes particular issue with the ALJ's failure to properly explain or consider obesity in his RFC assessment at step four.

20. Social Security Ruling 02-1p requires ALJs to consider the effects of

obesity at all steps of the sequential evaluation process. They must also consider whether the combined effects of all the impairments, without regard to whether any such impairment, if considered separately, would be of sufficient severity to meet a listing. See 20 C.F.R. § 404.1523.

21.    Here, the ALJ found that Plaintiff's obesity was a "severe impairment" that caused "more than a minimal functional limitation and interfere[d] with [Plaintiff's] ability to perform some basic work-related activities." (R. at 16.) Additionally, the ALJ expressly found that "obesity is now held to be one of multiple factors for the musculoskeletal, respiratory and cardiovascular impairment listing." (R. at 16.)

22.    In his RFC evaluation, the ALJ stated that he "considered all the symptoms" and specifically cited Plaintiff's obesity. (R. at 18-19.) He found that "[Plaintiff] had mild limitation to sustained physical activities due to poor weight control." (R. at 21.) The ALJ also continually references both Dr. Callahan's and Dr. Balderman's medical examinations, each of which lists and discusses Plaintiff's obesity, and each of which the ALJ considered in his RFC assessment.

23.    The Second Circuit has explained that "the absence of an express rationale does not prevent us from upholding the ALJ's determination regarding the appellant's claimed listed impairments, since portions of the ALJ's decision and the evidence before him indicate that his decision was supported by substantial evidence." See Berry, 675 F.2d at 468. When, as in this case, "the evidence of the record permits us to glean the rationale of the ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive." Mongeur v. Heckler, 722 F.2d 1033,

1040 (2d Cir. 1983) (citing Berry, 675 F.2d at 469).

24.    Here, there is no deficiency in the ALJ's decision. The ALJ was plainly aware of Plaintiff's obesity and considered it in his assessment. He also considered and discussed various medical evaluations that refer to Plaintiff's obesity in detail. The ALJ's rationale for his conclusions can be ascertained from the entirety of his decision, and the evidence as a whole, despite the ALJ's brief treatment of obesity in the RFC determination. See Mongeur, 722 F.2d at 1040.

25.    Plaintiff's next argument is that the ALJ's decision was not based on substantial evidence because he failed to properly weigh the treating source opinion. The ALJ afforded "little weight" to Dr. Callahan's opinion that Plaintiff is "temporarily totally disabled" because it was not supported by his medical records or other "detailed, clinical and diagnostic evidence." (R. at 20.)

26.    According to the "treating physician's rule,"[3] the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see Roma v. Astrue, No. 10-4351-cv, 2012 WL 147899, at *2 (2d Cir. Jan. 19, 2012); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). But the deference given to a treating physician may be reduced in light of other factors, such as the extent to which the medical evidence supports the doctor's opinion, whether the doctor is a specialist, the consistency of the opinion with the rest of the medical record, and any

---

[3] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

other factors "which tend to support or contradict the opinion." 20 C.F.R. § 404.1527(d)(3)-(6); see Roma, 2012 WL 147899, at *2. A treating source's opinion is not entitled to controlling weight if it is unsupported by, or inconsistent with, substantial evidence in the record. See Social Security Ruling ("SSR") 96.2p. Moreover, it is the Commissioner's responsibility to make the final decision as to whether the claimant meets the statutory definition of "disabled." See 20 C.F.R. § 404.1527(e)(1).

27. In this Court's view, the ALJ properly discounted Dr. Callahan's opinion. Dr. Callahan's assessments of the Plaintiff are contradictory. Even though Dr. Callahan classified Plaintiff as "temporarily totally disabled," he found that Plaintiff was in "no acute distress," had no "neck, back or arm pain," no "radiating pain," and was only a 3 out of 10 on a pain scale. (R. at 425-28.)

28. Dr. Callahan's conclusion that Plaintiff is "temporarily totally disabled" is also contradicted by Dr. Balderman's findings. When evaluated by Dr. Balderman, Plaintiff was in no acute distress and was reported in overall good health. (R. at 308.) She also had "5/5 strength in her upper and lower extremities, her joints were stable and nontender, and there was no redness, heat, swelling, or effusion." (R. at 309.) Hand and finger dexterity were intact and grip strength was 5/5 bilaterally. (R. at 309.) Accordingly, this Court finds that the ALJ properly rejected Dr. Callahan's cursory evaluation in favor of the objective medical evidence.

29. Next, Plaintiff contends that the Appeals Council erred because it did not request an updated expert medical opinion after receiving new medical evidence. The new evidence details treatment Plaintiff received at ECMC from January 5 to January 27, 2010. (R. at 4.) Plaintiff argues that this information warrants an updated medical

opinion regarding the finding that Plaintiff's impairments do not medically equal any impairment in the listings.

30. An updated expert medical opinion is required only if the ALJ or Appeals Council finds that new evidence would change the State agency medical or psychological consultant's findings. SSR 96-6p. Here, the new medical evidence discusses Plaintiff's complaints of chest pain, allergies, and vaginal discharge, which are unrelated and irrelevant to Plaintiff's argument that her carpal tunnel syndrome meets Listing 11.14. (R. at 437-38, 440-41.) Plaintiff was given relatively minor, common treatments such as Claritin-D for allergies and Albuterol Sulfate for wheezing and asthma. (R. at 439.) Thus, the Appeals Council considered the additional evidence, but determined that it did not warrant a change in the ALJ's findings. Consequently, an updated medical expert opinion was not required.

31. Plaintiff's fifth argument is that the ALJ failed to provide specific, substantive reasoning for his conclusion that she failed to meet Listing 11.14. The ALJ declared that Plaintiff's ailments "have not caused significant and persistent disorganization of motor function in two extremities," and therefore, Plaintiff's impairments "do not satisfy the clinical criteria of these or any other listings in the Listing of Impairments." (R. at 14.)

32. A decision may be upheld in the absence of express rationale, as long as "we are able to look at other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." See Salmini v. Comm'r of Soc. Sec., 371 Fed. Appx. 109, 112 (2d Cir. 2010); Berry, 675 F.2d at 469. There is only a need to remand a case "in which we would be unable to

fathom the ALJ's rationale in relation to evidence in the record," Berry, 675 F.2d at 469.

33. Here, the ALJ set forth his reasoning in sufficient detail in the fourth step of his analysis, where he discussed Dr. Callahan's findings that Plaintiff was in "no acute distress," had no "neck, back or arm pain," no "radiating pain," and was only a 3 out of 10 on a pain scale. (R. at 425-28.) Dr. Balderman also found that Plaintiff was relatively healthy and retained use of her upper bilateral extremities. (R. at 309.) Furthermore, Plaintiff's credibility concerning the severity of her injuries was questionable. (R. at 19.) Dr. Balderman believed that Plaintiff was subject to only mild to moderate limitation of work ability. (R. at 310.) Dr. Hill's evaluation showed that Plaintiff had no "psychiatric or cognitive problem[s] that significantly interfere[s] with her ability to function on a daily basis." (R. at 305.) Two other ECMC doctors found that Plaintiff was able to work part time or limited duty. (R. at 224-25.) Thus, the ALJ's decision that Plaintiff did not meet Listing 11.14 is supported by substantial evidence in the record.

34. Finally, this Court finds no merit in Plaintiff's last argument that the entirety of the Defendant's arguments are *post hoc* rationalizations to justify the ALJ's decision. This Court is aware that it "may not accept appellate counsel's *post hoc* rationalization for agency action," see Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) (quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)), and it has not done so here.

35. After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision. Accordingly, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking

the same relief.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 12) is DENIED.

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

Dated: July 28, 2012
Buffalo, New York

                                                         <u>/s/William M. Skretny</u>
                                                   WILLIAM M. SKRETNY
                                                          Chief Judge
                                        United States District Court